KARNES, Appellant, vs. JOHNSON, County Clerk, and others, Respondents.

*October 11—November 14, 1944.*

For the appellant there was a brief by *George L. Lange* and *George A. Solsrud,* both of Madison, and oral argument by *Mr. Lange.*

For the respondents there was a brief by *John A. Lawton,* assistant district attorney of Dane county, attorney for Austin N. Johnson, county clerk, and Clarence L. Femrite, county treasurer, and by *Roberts, Roe & Boardman* of Madison, attorneys for William T. Evjue, taxpayer, and oral argument by *Glenn D. Roberts.*

For the state of Wisconsin a brief was filed by the *Attorney General* and *James Ward Rector,* deputy attorney general, as *amicus curiæ.*

FAIRCHILD, J.   Sec. 59.15, Stats., permitted the county board at its annual meeting to fix the amount of salary for each county officer to be elected during the ensuing year.   By an act known as ch. 94, Laws of 1943, the legislature provided that:

"Notwithstanding any other provision of the law to the contrary, the county board may increase the salary of any elective county officer for or during his term of office. . . . This paragraph is emergency legislation and shall expire January 1, 1945."

This chapter was incorporated in the statutes as sub. (1) (ef) in sec. 59.15, Stats.   Appellant bases his contention that this provision includes county board supervisors, on the term "county officers" as found in sec. 59.15 (9), urging that it includes present county board members, and that the words "salary or compensation" as found in that section includes the

per diem rate paid to county board members. This claim rests on a misconstruction of the terms of the act. In order to prevail, it would be necessary to read the term "county officers" as found in sec. 59.15 (9), in connection with and as a part of sec. 59.15 (1) (ef), which was created by ch. 94, Laws of 1943, and that the words "salary or compensation" as found in sub. (9) also included the per diem rate provided for county board members. Reading the principal section and the subsection without regard to well-defined rules of construction, and overlooking the fixed policy that has always obtained of preventing so far as possible public officers from dealing as public officers with themselves in their private capacity, some confusion as to the meaning of the language used and the intention of the legislature may be brought about. But sec. 59.03 (2) (f) is the controlling section on fixing compensation for supervisors. That section was not included in ch. 94, Laws of 1943, and the provision there limiting the power of members of the board to fix compensation of members "to be elected at the next ensuing election" was left in full force and effect. So, no matter what particular officers may be comprehended in a definition of a county officer, the only question is whether the terms of the newly created sec. 59.15 (1) (ef) was meant to provide that members of the county board may increase their compensation during their term of office.

An examination of the legislative history of the two sections readily discloses the legislative intent. The present sec. 59.15, Stats., was originally enacted as ch. 75, Laws of 1867. It then read in part as follows:

"Section 1. At the annual meeting in November, in every year hereafter, the county board of supervisors for the several counties shall fix and determine the amount of the annual salary that shall be received by each and every county officer who is to be elected in their respective counties during the ensu-

ing year, and whose annual salary said supervisors have now or may hereafter have authority to establish.

"Section 2. The salary thus determined upon for each and every such officer, shall be and remain his salary, without increase or diminution, during his term of office."

At that time, compensation of county board supervisors was covered (as it is now) by a specific provision enacted by sec. 49, ch. 13, R. S. 1858, which later became sec. 59.03, Stats. That provision fixed a flat per diem rate of $2 per day, plus mileage, and gave the county board members no authority at all to raise or lower that rate of compensation. This was changed from time to time and ch. 170, Laws of 1913, for the first time provided for county board action in fixing compensation by allowing the board to raise the compensation from $3 to $4 per diem. It is apparent that at this time the specific statutory provisions applying to the county board governed and that the general provisions for compensation of other county officers had no application.

In 1929, ch. 362, Laws of 1929, was enacted creating sub. (9) of sec. 59.15, Stats., defining the term "county officer:"

"(9) In this section the term 'county officer' means any elective officer whose salary or compensation is paid in whole or in part out of the county treasury, including salaries or compensation so paid for which compensation is made by the state."

If appellant's contention that a county board member is within sec. 59.15, Stats., then it is patent that after 1929 such section would have been applicable to said board members. Yet the substantive provisions of the two sections remained unchanged thereafter. The provisions of the two sections are manifestly repugnant to each other since sec. 59.03 (2) (f) fixed a top limit to the compensation of the supervisors and sec. 59.15 prescribes no such limit. Had sec. 59.15 been

intended to govern after the amendment of 1929, the top limit of compensation fixed in sec. 59.03 (2) (f) would have been impliedly repealed as well as sec. 59.03 (1) (c), providing a fixed annual salary of $2,400 for Milwaukee county supervisors. Unless there is an inconsistency, an earlier statute remains in force in the absence of a definite indication of intention to abrogate it. " '. . . A repeal by implication is not favored; on the contrary, courts are bound to uphold the prior law, if the two acts may well subsist together.' " *Attorney General ex. rel. Taylor v. Brown* (1853), 1 Wis. *513, *525; *Milwaukee County v. Halsey* (1912), 149 Wis. 82, 136 N. W. 139.

A subsequent amendment of sec. 59.03 (2) (f), Stats., by ch. 407, Laws of 1935, further reveals that the 1929 amendment defining county officers, resulted in a distinction between county officers and officers who are supervisors so far as compensation is concerned, and was never meant to include members of the county board of supervisors in the matter of remunerating them. That amendment permitted the payment of an annual salary as distinguished from a per diem to board members in counties other than Milwaukee county by a two-thirds vote of the board, such annual salary not to exceed $500. No such amendment would have been necessary had sec. 59.15 (9) been intended to bring the members of the county board within sec. 59.15.

Ch. 94, Laws of 1943, which appellant contends gave the board the authority to raise its members' salaries before the next ensuing election, was a new section, by its terms creating sec. 59.15 (1) (ef), Stats. It appears that this legislation, constituting an exception to sec. 59.15 (1), can apply only to an officer whose compensation is fixed under sub. (1) of sec. 59.15. To hold otherwise would be an implied repeal of provisions in sec. 59.03, by setting aside the $5 per diem limit or the ceiling of $500 of the alternative annual salary provision, and by setting aside the provision allowing the board

to increase compensation only for members "to be elected at the next ensuing election;" and by substituting a mere majority vote for the two-thirds vote prescribed in the alternative method of compensation in sec. 59.03 (2) (f).

Legislative history before the enactment of ch. 94, Laws of 1943, as set forth above, shows clearly that the two sections are mutually exclusive. It follows that the resolution of the county board raising the per diem rate of supervisors from $4 to $5 per day before the next ensuing election is invalid because contrary to provisions of sec. 59.03 (2) (f), Stats.

*By the Court.*—Order affirmed.